# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

ANTHONY NWACHUKWU,

    Plaintiff,

v.

LIBERTY BANK,

    Defendant

Case No. 3:16-cv-00704 (CSH)

May 1, 2018

## RULING ON DEFENDANT'S MOTIONS FOR PROTECTIVE ORDER

HAIGHT, Senior District Judge:

    Pending are two defense Motions for Protective Order [Doc. 54, 59], regarding the ongoing discovery in this civil rights litigation. This ruling will resolve both.

**I. BACKGROUND**

    Defendant Liberty Bank ("the Bank" or "Defendant") first requested a protective order by its Motion [Doc 54] of November 17, 2017. I deferred resolution of that Motion, by text order, on December 27, 2017:

> The Court is in no position to adjudicate Defendant's present request, where Plaintiff has not provided the requests for production and/or interrogatories which occasioned Defendant's Motion, and where Defendant, for its part, has not complied with Local Rule 7(a)(1)'s requirement to provide a memorandum as to the disputed issues of law. Absent any information on the nature of discovery sought, and the legal basis for denying that discovery, the Court is unable to rule.

By its renewed Motion [Doc. 59], Defendant asks the Court to enter a protective order, pursuant to Federal Rule of Civil Procedure 26(c)(1), in order to exclude certain materials from the Defendant's

1

initial disclosures required of Defendant by Rule 26(a)(1), and to prospectively preclude the discovery of those same materials during the later stages of discovery. Plaintiff Anthony Nwachukwu ("Plaintiff") has filed an Objection [Doc. 61] to the instant Motion, and Defendant has filed a Reply [Doc. 62].

Defendant argues that federal law and regulation

> prohibit a financial institution from disclosing certain documents, which would otherwise be subject to disclosure under Rule 26(a)(1) or discovery under the Federal Rules of Civil Procedure. Without confirming or denying their existence, if Liberty Bank is in possession of documents encompassed by 12 U.S.C.A. § 3420 and 18 U.S.C. § 1510(b)(2), any disclosure thereof would violate the law and could subject the bank to criminal penalties.

Def. Br. 4. Defendant therefore seeks "a Protective Order from this Court prohibiting the disclosure or discovery of documents or information which might otherwise be subject to disclosure under Rule 26(a)(1), or other discovery."

Defendant is asking for two forms of protection: first, specific relief from the requirements of initial disclosures under Rule 26(a)(1), and, second, prospective and broader protection from anticipated interrogatories and requests for production. Defendant's reply brief attempts to clarify and particularize these alternate bases for protection:

> The Defendant filed the Motion for Protective Order in conjunction with its disclosures under Rule 26(a)(1) so as to prohibit the disclosure of discovery of certain documents, should they exist. The Motion for Protective Order was not filed in response to the Plaintiff's interrogatories or requests for production. The impetus for its filing was the requirements of 26(a)(1), which could potentially require a party to violate the law by requiring the disclosure of certain protected documents. Liberty Bank acknowledges that the Protective Order might extend to information or documents also sought in Plaintiff's discovery. However, Defendant intends to respond or object to Plaintiff's discovery in course. The Protective Order is

2

>merely an attempt to deal with potential disclosure conflicts that may exist. In that sense, it is reactive to Rule 26(a)(1) and proactive concerning expected discovery.

Doc. 62 at 1-2.

## II. STANDARD FOR ISSUANCE OF PROTECTIVE ORDER

Under Federal Rule of Civil Procedure 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[1]

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 415 (E.D.N.Y.2007) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). "The touchstone of the court's power under Rule 26(c) is the requirement of 'good cause.' The party wishing to seal materials bears the burden of demonstrating good cause as to why the material should

---

[1] Additionally, any motion for protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). Defendant argues that it is unable to comply with this requirement, because, "given the nature of the relief sought . . . such a conference would be impossible." Def. Br. at 7. The Court does not understand why such a conference would be "impossible" in this instance. As discussed further *infra,* Defendant claims that certain federal statutes and regulations, pertinent to financial institutions, prevent its disclosing the existence and contents of certain documents. Plaintiff seems to be well aware of these legal strictures. *See* Pl. Br. at 4-5 ("We do not dispute that such information covered under any such regulations would likely preclude [discovery] and would be subject to a protective order.") The Court cannot divine why it was "impossible" for Defendant to discuss the strictures of these regulations with opposing counsel. Such conference, held in good faith between competent legal professionals, would not, as Defendant seems to suggest, have required Defendant to either confirm or deny the existence of such protected documents. It is solely in the interests of judicial efficiency, and to avoid further delay, that I now disregard Defendant's failure to make a good faith effort to confer on this issue, and caution that future motions for protective orders in this matter must comply with the spirit and letter of this procedural requirement.

be concealed from the public." *Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147, 152–53 (S.D.N.Y. 2015) (Sweet, J.). *See also Penthouse Int'l, Ltd. v. Playboy Enters.*, 663 F. 2d 371, 391 (2d Cir. 1981) ("Where . . . the [discovery is] relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause.").

I will now consider whether Defendant has made the requisite showing of good cause, first as to its purported need to withhold information from its initial disclosures under Rule 26(a)(1), and then as to the need for a protective order governing "other discovery."

### III. DISCUSSION

**A. As to the Initial Disclosures Prescribed by Rule 26(a)(1)**

Under Rule 26(a)(1)(A), "Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties: (ii) . . . a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control *and may use* to support its claims or defenses, unless the use would be solely for impeachment." (Emphasis added). Defendant accurately quotes this language at page 3 of its main brief, but then goes on to mis-characterize Rule 26(a), at page 6: "Rule 26(a) of the Federal Rules for Civil Procedure requires the disclosure of all documents or information Liberty Bank has in its possession that *would support* its defenses." (Emphasis added). This is incorrect: Rule 26(a) only requires disclosure by a defendant of those documents, stored information, and tangible things that a party "may use" in its defense, not all evidence that "would support" such defense.

The 2000 Advisory Committee notes to Rule 26(a)(1) specify:

> The initial disclosure obligation of subdivisions (a)(1)(A) and (B) has

4

> been narrowed to identification of witnesses and documents that the disclosing party may use to support its claims or defenses. "Use" includes any use at a pretrial conference, to support a motion, or at trial. The disclosure obligation is also triggered by intended use in discovery, apart from use to respond to a discovery request; use of a document to question a witness during a deposition is a common example. The disclosure obligation attaches . . . to documents the party intends to use if – in the language of Rule 26(a)(3) –"the need arises."
>
> *A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use. . . .* As case preparation continues, a party must supplement its disclosures when it determines that it may use a witness or document that it did not previously intend to use.

(Emphasis added). Defendant argues repeatedly and stridently that merely disclosing the existence of the category of document for which it seeks Court protection could subject it to criminal liability. However, it is difficult to imagine that Defendant has any intention of "using" the documents under discussion in its defense, as such use would, according to Defendant, be a criminal act. I am therefore at a loss as to why Defendant seeks the instant protective order. If Defendant does not intend to use these documents in presentation of its defense, Defendant is under no obligation to disclose the existence or content of these documents during the routine disclosures prescribed by Rule 26(a)(1).

Defendant's Motion is therefore DENIED AS MOOT as to the initial disclosures prescribed by Rule 26(a)(1), and Defendant is directed to be entirely forthcoming in those disclosures, to the extent contemplated by the Rules.

**B. As to "other discovery"**

Turning from the issue of preliminary disclosures, for which I find no protective order is needed or justified, I come to Defendant's arguments in favor of a "prospective" protective order

regarding further discovery. *See* Def. Reply Br. at 2.

Defendant argues "that certain federal laws and regulations prohibit a bank, like the Defendant, from disclosing certain documents or information." Def. Br. at 3. Defendant cites, for this proposition, 12 C.F.R. Part 309, 12 C.F.R. Part 350, 12 C.F.R. § 353, 31 C.F.R § 1020, § 314 (a) of the USA Patriot Act of 2001 (P.L. 107-56), 31 C.F.R. § 1010.520(3)(iv)(B), and 31 U.S.C. § 5318(g)(2)(A). *Id.* Defendant cites, as sole example of the type of document for which protection sought, the statutory and regulatory protections for "suspicious activity reports," ("SARs"):

> "If a financial institution or any director, officer, employee, or agent of any financial institution, voluntarily or pursuant to this section or any other authority, reports a suspicious transaction to a government agency– (I) the financial institution, director, officer, employee, or agent may not notify any person involved in the transaction that the transaction has been reported…"
>
> [A] bank or person requested to disclose a SAR or the information contained in a SAR must notify the OCC [Office of the Comptroller of the Currency] and must "decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed . . . ."

*Id.* at 3-4 (citing and quoting 31 U.S.C. § 5318(g) and 12 C.F.R. § 21.11(k)).

In obtaining a protective order, "[t]he burden of persuasion is clearly on the party seeking the protective order, which must demonstrate a particular need for protection, not a broad allegation of harm unsubstantiated by specific examples." *J.T. Baker, Inc. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 86, 90 (D.N.J. 1989). "[T]he moving party must show that a clearly defined and very serious injury will result if a protective order is not issued." *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 479 (S.D.N.Y. 1982) (Goettel, J.) (internal quotation marks omitted).

As noted, Defendant cites a flurry of statutes and regulations in arguing for a broadly-worded, "prospective" protective order. However, Defendant's *sole specific example* of a need for protection

is the SAR.

Defendant is correct as to the broad protection of SARs from civil discovery: "The cases uniformly recognize that section 5318(g)(2)(A)(I) and the related regulations create a discovery and evidentiary privilege that may be invoked by a bank in order to avoid producing a SAR during the course of a civil proceeding." *In re Whitley*, No. 10-10426C-7G, 2011 WL 6202895, at *3 (Bankr. M.D.N.C. Dec. 13, 2011). *See also BizCapital Bus. & Indus. Dev. Corp. v. Comptroller of Currency of U.S.*, 467 F.3d 871, 873 n. 3 (5th Cir. 2006) ("the Bank Secrecy Act, the OCC's regulations, and case law establish an absolute prohibition on financial institutions from disclosing to third parties information about the filing of a SAR"); *Lee v. Bankers Tr. Co.*, 166 F.3d 540, 544 (2d Cir. 1999) ("even in a suit for damages based on disclosures allegedly made in an SAR, a financial institution cannot reveal what disclosures it made in an SAR, or even whether it filed an SAR at all"); *Whitney Nat. Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004) ("a court should protect against discovery into information that would reveal that a report of a suspicious transaction to a government agency has been prepared or filed or would reveal its contents"); *United States v. Holihan*, 248 F. Supp. 2d 179, 186 (W.D.N.Y. 2003) ("31 U.S.C. § 5318(g) as implemented by 12 C.F.R. § 21.11(k) create an unqualified discovery and evidentiary privilege that cannot be waived."); *Cotton v. PrivateBank & Tr. Co.*, 235 F. Supp. 2d 809, 814 (N.D. Ill. 2002) ("the [SAR] confidentiality privilege . . . is not qualified and is not subject to waiver by the financial institution. . . . courts have refused to order an exception to that privilege, even if necessary to raise an affirmative defense"); *Weil v. Long Island Sav. Bank*, 195 F. Supp. 2d 383, 389 (E.D.N.Y. 2001) ("pursuant to the plain language of the regulation, the [SAR] confidentiality privilege . . . is not qualified. Further, the privilege is not subject to waiver by the financial institution").

I find these precedents, and their application of the cited statutory and regulatory language, to be unambiguous and compelling. This showing is sufficient to meet the "good cause" standard and to justify the issuance of a protective order excusing Defendant from any obligation to reveal the existence or contents of any SAR that might otherwise be subject to discovery in this matter.

I caution Defendant that this protection is strictly drawn: regulation "prohibits disclosure of SARs or their content, even in the context of discovery in a civil lawsuit, and . . . the enabling legislation is specific enough to support that purpose. *Supporting documentation, on the other hand, is discoverable.*" *Weil*, 195 F. Supp. 2d at 389 (emphasis added). *See also Toader v. J.P. Morgan Chase Bank*, No. 09 C 6684, 2011 WL 3796705, at *3 (N.D. Ill. Aug. 23, 2011) ("the bank . . . may disclose the underlying factual documents that led the bank to file a SAR" (internal quotation marks omitted)), *aff'd,* 482 F. App'x 180 (7th Cir. 2012); *Whitney Nat. Bank*, 306 F. Supp. 2d at 682 ("Courts have . . . allowed the production of supporting documentation that was generated or received in the ordinary course of the bank's business, on which the report of suspicious activity was based."); *Bank of China v. St. Paul Mercury Ins. Co.*, No. 03 CIV. 9797 (RWS), 2004 WL 2624673, at *6 (S.D.N.Y. Nov. 18, 2004) ("As stated by the OCC and upheld by the courts, the facts giving rise to the filing of a SAR are discoverable if those facts are available in a document created in the ordinary course of the Bank's business. However, the Bank is precluded from stating whether certain facts are contained in the SARs themselves."), *as modified on reconsideration sub nom. Bank of China, New York Branch v. St. Paul Mercury Ins. Co.*, No. 03 CIV. 9797 (RWS), 2005 WL 580502 (S.D.N.Y. Mar. 10, 2005). "Although in some cases the supporting documentation may disclose the existence of an SAR and its contents, thereby thwarting the regulation's intent, any supporting documentation which would not reveal either the fact that an SAR was filed or its contents cannot

be shielded from otherwise appropriate discovery based solely on its connection to an SAR." *Holihan*, 248 F. Supp. 2d at 187. Therefore, in drafting a protective order, "the better approach prohibits disclosure of the SAR while making clear that the underlying transaction such as wire transfers, checks, deposits, etc. are disclosed as part of the normal discovery process." *Cotton*, 235 F. Supp. 2d at 814.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motions for Protective Order [Docs. 54, 59] are DENIED AS MOOT as to the initial disclosures under Federal Rule of Civil Procedure 26(a)(1), GRANTED, IN PRINCIPLE, as to the narrow protection of suspicious activity reports ("SARs") from future discovery, and DENIED as to any other protection sought. This protection shall extend to protect Defendant from revealing the existence and/or contents of any SAR, as defined by statute and regulation. It *shall not protect* underlying or supporting documents which may have given rise to a SAR, or be otherwise connected to a SAR, unless production of such a supporting document will reveal the existence and/or specific contents of any given SAR. As no proposed protective order accompanied the instant Motions, Defendant is directed to file such a proposed protective order, consistent with this opinion, on or before **Tuesday, May 15, 2018**.

Nothing in this opinion precludes Defendant (or Plaintiff) from seeking further protection from discovery, should the need arise.

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
       May 1, 2018

                                        */s/ Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge