UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTHONY NWACHUKWU : | |
| v. : | Case No. 3:16 CV 00704-CSH |
| LIBERTY BANK : | JULY 26, 2018 |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSE**

The Defendant, Liberty Bank, hereby objects to the Plaintiff's Motion to Compel a Response to his Interrogatories and Requests for Production, filed on July 6, 2018 (Doc. # 70). Local Rule 37 clearly requires any party seeking relief from the court with respect to any discovery dispute to confer with opposing counsel and make a good faith effort to eliminate or reduce the dispute. Plaintiff has failed to make any effort to resolve the issues raised in his Motion to Compel with counsel for the Defendant. In fact, as more particularly described herein and in the attached Affidavit, the Plaintiff has ignored or neglected to respond to counsel for the Defendant's efforts to confer on any outstanding discovery disputes or controversies. For this reason, and the reasons described herein, the Plaintiff's Motion to Compel should be denied.

**Nature of the Case**

The present case was served on the Defendant Liberty Bank on or around May 9, 2016. The Plaintiff's Complaint has been amended twice, and a number of the counts or causes of action contained in the original Complaint have been stricken, but the gravamen

1

of the Complaint remains the Plaintiff's allegation that the Defendant violated his civil rights by its conduct towards the Plaintiff when he was a customer of the Defendant.

**Background**

Since the inception of this lawsuit, over two years ago now, there has been an ongoing discovery dispute between the parties. The initial Complaint was accompanied by a subpoena directed to Liberty Bank for the production of documents, some of which Liberty Bank would be legally obligated not to disclose, if they exist. Accordingly, Liberty Bank filed a Motion to Quash on May 12, 2016 (Doc. # 14). This Court granted a Motion to Quash the Plaintiff's subpoena on July 6, 2016 (Doc. # 26).

The Plaintiff served Interrogatories and Requests for Production on the Defendant in March, 2017. These discovery requests potentially encompassed Suspicious Activity Reports (SARS), or materials that would disclose or reveal the existence of SARS documents, if they exist, this Court ruled in its Order granting the Defendant's Motion to Quash would be protected from disclosure. As such, the Defendant first moved for a protective order to stay discovery on May 10, 2017 (Doc. # 37). The Defendant contended that, until the issues involving the Plaintiff's Complaint and the Defendant's motion to dismiss had been resolved by the Court, any discovery would be premature. The Defendant at this time had not served any discovery on the Plaintiff.

On July 5, 2017, the Court granted in part and denied in part the Plaintiff's Second Motion to Amend his Complaint. All previously noticed pre-trial discovery was stayed pending further court order. As a consequence, several counts of the Plaintiff's

Complaint were removed. As a further consequence, the Defendant's motion for protective order was dismissed as moot (Doc. # 42).

The Court ordered its stay on discovery lifted on October 24, 2017 (Doc. # 50). On November 17, 2017 the Plaintiff again moved for a protective order, relying in large part on the Court's order and reasoning regarding the Plaintiff's earlier motion to quash (Doc. # 54). The Plaintiff filed opposition to the motion for protective order on December 7, 2017 (Doc. # 56). The Defendant filed a reply brief on December 18, 2017 (Doc. # 57). The Court denied the motion on December 27, 2017 on the basis that the standard used to grant to the Motion to Quash was different than that required for the granting of a protective order under Fed. R. Civ. Pro. 26 (Doc. # 58). The Defendant again moved for a Motion for Protective Order on January 10, 2018 (Doc. # 59). Again, the Defendant sought to protect against the disclosure, if they exist, of SARS or materials that would disclose the existence of SARS as well as any documents prohibited from disclosure by a financial institutional pursuant to 12 U.S.C.A. § 3420 and 18 U.S.C. § 1510(b)(2).

The Plaintiff filed opposition to the motion for protective order and an objection on February 27, 2018 (Doc. #'s 60 and 61). The Defendant in turn filed a reply brief on March 12, 2018 (Doc. # 62). The Plaintiff then filed a sur-reply on April 2, 2018 (Doc. # 63).

The motion for protective order was granted by the Court as to the SARS documents only on May 1, 2018, and the Court ordered the defendant to draft a proposed protective order (Doc. # 65). The Defendant filed its proposed protective order on May

15, 2018 (Doc. # 66). On this date, the Defendant attempted to engage the Plaintiff in talks on resolving the parties' disputes over discovery, to no avail, as more particularly described in the attached affidavit (See attached Affidavit of Attorney Kyle R. Pavlick). The Plaintiff objected to the proposed protective order on May 18, 2018 (Doc. # 68). The protective order was entered by the Court on June 5, 2018 (Doc. # 69). The Plaintiff's motion to compel followed on July 6 (Doc. # 70).

**Argument**

As should be clear, the year long delay in responding to the Plaintiff's Interrogatories and Requests for Production is a result of the Defendant's reasonable and necessary efforts to protect from disclosure certain documents, if they exist, that this Court has agreed are legally barred from disclosure. In this vein, the Defendant has attempted to confer with the Plaintiff to resolve disputes relating to the production of documents as well as objections to discovery. Those efforts as outlined in the attached Affidavit, have been ignored or dismissed without reason by the Plaintiff. Accordingly, any suggestion that the Defendant has simply ignored the Plaintiff's discovery requests for more than a year is inaccurate and totally ignores the efforts by Defendant's counsel, over more than a year, to deal with preliminary issues of disclosure and the risk of criminal liability connected therewith.

Furthermore, the Court indicated in its protective order that an *"in-camera"* review of certain documents, if they exist, would be available to the Defendant. It makes most sense to have an *"in-camera"* review of the documents that are potentially

responsive to the Plaintiff's discovery requests, prior to any response to the Plaintiff's discovery.

Counsel for the Defendant has attempted to discuss its objections to the Plaintiff's discovery requests, of which there are several, with Plaintiff's counsel. Those objections, and the subject interrogatories themselves, are clearly set forth in Exhibit B attached hereto.  The objections are predominately based on the following criteria: that the interrogatory is not reasonably calculated to lead to the discovery of admissible evidence; that it requires speculation; that it is argumentative and presumes the truth of allegations contained in the complaint that the Defendant denies; and that it violates bank privacy laws. Despite efforts to confer with Plaintiff's counsel to address these objections, Plaintiff's counsel, without explanation, has not responded to the Defendant's inquiry.

As more particularly described in the attached Affidavit, the Defendant's counsel has made efforts to confer with counsel for the Plaintiff in an effort to resolve any remaining discovery disputes. Although counsel for the Plaintiff initially indicated he would participate in discovery negotiations, he has instead failed to do so, and filed a motion to compel. The Federal Rules of Civil Procedure require the parties to make good faith efforts to resolve discovery disputes. See D. Conn. L. Civ. R. 37(a). Counsel for the Plaintiff, however, has wholly failed to do so.

**Conclusion**

Pursuant to D. Conn. L. Civ. R. 37(a), the Court should require the parties to engage in good faith negotiations on their discovery disputes. Judicial intervention is premature and unnecessary since Plaintiff's counsel has made no effort to resolve these discovery issues with the Defendant's counsel.

Wherefore, the Defendant, Liberty Bank, respectfully requests that the Court deny the Plaintiff's motion to compel.

                                              DEFENDANT,
                                              LIBERTY BANK

                                              By:    /s/ Kyle R. Pavlick ct27570
                                                         KYLE R. PAVLICK
                                                         ct27570
                                                          Cranmore, FitzGerald & Meaney
                                                          49 Wethersfield Avenue
                                                          Hartford, CT 06114
                                                          Telephone: (860) 522-9100
                                                          Facsimile: (860) 522-3379

## **CERTIFICATION OF SERVICE**

      I hereby certify that on July 26, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

John A. Sodipo, Esq.
Law Offices of Jacobs & Sodipo, LLC
120 Oxford Street
Hartford, CT 06105

                                                     By:    /s/ Kyle R. Pavlick ct27570
                                                                          KYLE R. PAVLICK

EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTHONY NWACHUKWU           :

v.                          :           Case No. 3:16 CV 00704-CSH

LIBERTY BANK                :           JULY 26, 2018

## AFFIDAVIT

STATE OF CONNECTICUT:
                    : ss:  Hartford
COUNTY OF HARTFORD  :

I, Kyle R. Pavlick, being duly sworn, hereby depose and state as follows:

1. I am over the age of eighteen and believe in the obligations of an oath.

2. I am one of the attorneys of this office who has actively participated in the above referenced lawsuit.

3. Throughout the course of this lawsuit, this office has attempted to resolve, either with the court or opposing counsel, issues relating to documents that may be subject to disclosure or discovery that the defendant would be prohibited by law from disclosing, should they exist.

4. In that vein, I called opposing counsel, John Sodipo, on May 15, 2018, in an effort to discuss these issues insofar as they impact the defendant's obligations to respond to plaintiff's discovery requests.

1

5. I was unable to reach Attorney Sodipo on that date, so I left a message and provided my cell phone number so that Attorney Sodipo could reach me even if I was out of the office.

6. On May 16, 2018, Attorney Sodipo returned my call and we discussed my concerns with the Protective Order issued by the Court and whether or not it would apply to grand jury subpoena documents, should they exist.

7. I explained to Attorney Sodipo that the defendant would be prohibited by law from disclosing any grand jury documents, if they exist.

8. Accordingly, and in an attempt to resolve these issues without judicial intervention, I asked Attorney Sodipo if he would agree that the defendant should not be required to disclose any grand jury documents, if they exist.

9. Attorney Sodipo indicated that he would think about it and would call me back the next day.

10. Attorney Sodipo did not respond to my request made May 16, 2018.

11. Instead, Attorney Sodipo filed a Motion to Compel on July 6, 2018.

12. On July 10, 2018, I emailed Attorney Sodipo, a copy of which is attached hereto, in an effort to continue our discussion of May 16, 2018 and to schedule a date and time to discuss the defendant's objections to the plaintiff's interrogatories and requests for production.

13. To date, Attorney Sodipo has not responded to my email of July 10, 2018.

14. This office has consistently taken the position, with the Court and with opposing counsel, that issues relative to the protective order and any grand jury documents, should they exist, and any objections to interrogatories and requests for production, should be resolved prior to any disclosure or response to discovery by the defendant.

Further, the deponent sayeth not.

*Kyle R. Pavlick*

Subscribed and sworn to before me this 26th day of July, 2018.

Notary Public
My Commission Expires:

**ANDREA L. ALMEIDA**
**NOTARY PUBLIC**
**MY COMMISSION EXPIRES AUG. 31, 2019**

3

**EXHIBIT B**

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ANTHONY NWACHUKWU<br><br>Plaintiff,<br><br>-v-<br><br>LIBERTY BANK<br><br>Defendant. | CIVIL ACTION NO. 3:16-CV-704 (CSH)<br><br><br><br>JULY 26, 2018 |

**DEFENDANT'S PROPOSED OBJECTIONS TO INTERROGATORIES**

The Defendant, **Liberty Bank**, anticipates making the following objections to the Plaintiff's First Set of Interrogatories dated March 24, 2017:

**General Objection: The Defendant objects insofar as the Plaintiff has cited Connecticut Practice Book Sections 13-6 through 13-10 and attempts to impart Connecticut State Superior Court rules of discovery in this, a federal lawsuit. The Federal Rules of Civil Procedure clearly and exclusively govern the discovery process in this case.**

2.    Please state with specificity each and every federal, state, local and internal anti-discriminatory policies, regulations, laws or other guiding principles Liberty Bank is obligated to follow, specifying each such policy, regulation(s), laws or other guiding principles referred to in your response.

**Objection. The Defendant objects to the foregoing interrogatory on the basis that it is overly broad and ambiguous. The interrogatory is confusing insofar as it calls for the Defendant to identify "guiding principles" in its response. Furthermore, the**

**Defendant is not a lawyer and cannot be expected to identify each and every federal, state, local or other regulation, laws or authority which governs the Bank's conduct. This interrogatory appears designed to have the Defendant research applicable laws for the Plaintiff's claims. The laws and regulations speak for themselves.**

4.  In the five years previous to the closing of the Plaintiff's checking account by Liberty Bank, how many other accounts, checking or saving, were closed by Liberty Bank throughout the State of Connecticut for reasons given the Plaintiff as alleged in the complaint, i.e., "we don't want to do business with people of your type."

**Objection. The Defendant objects to the foregoing interrogatory on the basis that it is argumentative and presumptive in that it assumes the truth of allegations made in the Complaint which were denied by the Defendant.**

5.  In the five years previous to the closing of the Plaintiff's checking account by Liberty Bank, how many other accounts, checking or saving, were closed by Liberty Bank throughout the State of Connecticut for:

   (a) the manner and amounts of bi-weekly deposits;

   (b) the locations from which such bi-weekly deposits into such accounts were made; and,

   (c) bi-weekly deposits over a specific amount, and if so, state the exact amount for which such accounts were closed.

**Objection. The Defendant objects to the foregoing interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous. The interrogatory is unclear.**

6.  State how many customers at Liberty Bank's West Hartford branch make deposits into checking or savings accounts on a regular basis, i.e., weekly, bi-weekly, monthly or other regular basis.

**Objection. The Defendant objects to the foregoing interrogatory on the basis that it is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad, vague, and represents oppression and harassment in the scope and breadth of the request. Furthermore, the information requested may be protected by bank privacy laws.**

7. As to those customers at Liberty Bank referred to in the previous interrogatory, how many make:

>(a) weekly deposits of $500 or more;

>(b) bi-weekly deposits of $1,000 or more;

>(c) monthly deposits of $5,000 or more; and

>(d) regular deposits of $10,000 or more.

**Objection. The Defendant objects to the foregoing interrogatory on the basis that it is not reasonably calculated to lead to the discovery of admissible evidence, it is not limited in time and is overly burdensome. Furthermore, the information requested may be protected by bank privacy laws.**

8. Does Liberty Bank in any of its branches engage in business of any kind or direct investments with countries from outside of the United States, or have banking customers from outside of the United States? If so, state which countries in which it does any such business, investments or has any such banking customers.

**Objection. The Defendant objects to the foregoing interrogatory on the basis that it is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad, vague, and represents oppression and harassment in the scope and breadth of the request.**

9. Does Liberty Bank or any of its branches have any customers who came to the United States from other countries, and if so, are any from Nigeria.

**Objection.  The Defendant objects to the foregoing interrogatory insofar as it violates bank privacy laws.**

14. Who at Liberty Bank's West Hartford branch had the authority to close a checking account that was not overdrawn and up to date on all fees charged by the Bank?

**Objection.  The Defendant objects to the foregoing interrogatory on the basis that it is redundant or repetitive in that it seeks the same information provided in response to Interrogatory 3 above.**

15. Did such authorized employees at Liberty Bank's West Hartford branch referred to in the previous interrogatory have to seek the approval of more senior employees before terminating such accounts?  If so, name the persons and each of their titles.

**Objection.  The Defendant objects to the foregoing interrogatory on the basis that it is redundant or repetitive in that it seeks the same information provided in response to Interrogatory 3 above.**

16. State the specific procedures at Liberty Bank for terminating a banking customer's account at the Bank pursuant to Liberty Bank's Personal Deposit Account Agreement, Part II, section A. General Rules for all Accounts, subsection 18, entitled Terminating Accounts.

**Objection.  The Defendant objects to the foregoing interrogatory on the basis that it is redundant or repetitive in that it seeks the same information provided in response to Interrogatory 13 above.**

17. Who at the West Hartford branch of the Bank had the ultimate authority to terminate an account of a customer of the Bank under the section of the Bank's Personal Deposit Account Agreement referred to in the previous interrogatory, or to terminate such accounts for any reason whether pursuant to the Bank's Personal Deposit Account Agreement or for other reasons?

**Objection.  The Defendant objects to the foregoing interrogatory on the basis that it is redundant or repetitive in that it seeks the same information provided in response to Interrogatories 3, 14 and 15 above.**

20.     During a telephone conversation between the Plaintiff and First Vice President Fujio on or about April 29, 2016, did Ms. Fujio refuse a request by the Plaintiff for an extension of time within which she told him his account would be terminated, so that the Plaintiff could explain the nature of his business since she had incorrectly described to the Plaintiff?

**Objection. The Defendant objects to the foregoing interrogatory on the basis that it is argumentative and presumes allegations contained in the Complaint are true despite the Defendant's denial of same.**

23.     Please state whether any of the Bank's policies, written or otherwise, would prohibit any of its employees from stating to a customer of the Bank that it did not want to do business or want money from that "type" of a customer of the Bank, no matter what the reference to the customer's type was intended to refer.

**Objection.  The Defendant objects to the foregoing interrogatory on the basis that it is argumentative, presumptive and calls for speculation.**

24.     Please state whether any of the Bank's policies, written or otherwise, prohibit employees from inquiring about the national origin of any of its customers.  If there is no such prohibition how would the Bank prevent any of its employees from using such information about its customers' national origin for improper purposes?

**Objection.  The Defendant objects to the foregoing interrogatory on the basis that it is argumentative, presumptive and calls for speculation.**